IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DON B. CHAE,                §<br>         PLAINTIFF,         §<br>                                     §<br>V.                                   §<br>                                     §<br>AMERICAN FIDELITY ASSURANCE §<br>COMPANY,                       §<br>         DEFENDANT.         § | CASE NO. 3:19-CV-157-S-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Referral*, Doc. 9, this cause is before the Court on Plaintiff's *Application for Preliminary Injunction*, Doc. 3. For the reasons that follow, the motion should be **DENIED**.

**A. Background**

This case involves a dispute between an insured and an insurance company regarding the latter's ability to raise the insured's premium costs. Some background is necessary for context. In the 1980s, Plaintiff purchased two life insurance policies ("the Policies") from Mid-Continent Life Insurance Company of Oklahoma City ("Mid-Continent"). In 1997, Mid-Continent experienced financial difficulties and was placed into receivership with the Oklahoma Commissioner of Insurance serving as Receiver (the "Receivership Action"). Doc. 20 at 13.

During the Receivership Action, individuals or entities who had an ownership interest in Mid-Continent's policies filed a class action lawsuit against Mid-Continent (the "Class Action"). Doc. 20 at 2; Doc. 85-86. The cases ultimately settled (collectively, the "Settlement Agreement"). Doc. 20 at 2-3. As to the Receivership Action, Defendant agreed to assume Mid-

Continent's life insurance policies and entered into an Assumption Reinsurance Agreement (the "Assumption Agreement") with the Receiver in July 2000.  Doc. 20 at 2; Doc. 20 at 6-83.  In September 2000, an Oklahoma judge approved the Receiver's Amended Rehabilitation Plan (the "Rehabilitation Plan"), which incorporated the Assumption and Settlement Agreements.  Doc. 20 at 3; Doc. 20 at 109.

The Class Action was settled in November 2000 when Mid-Continent's owner agreed to pay $17.5 million into a general relief fund established for the benefit of its policyholders and to be administered by Defendant.  Doc. 20 at 3; Doc. 20 at 84-94.  Thereafter, on behalf of the Receiver, a third-party settlement administrator sent Mid-Continent policyholders documentation which explained the Rehabilitation Plan and gave policyholders until December 11, 2000 to advise whether they wanted to opt in or opt out of the Class Action settlement.  Doc. 20 at 3; Doc. 20 at 95-102.  In relevant part, the document included Defendant's agreement to not raise policyholder premiums for a period of 17 years, but advised that premiums could be raised thereafter.  Doc. 20 at 3; Doc. 20 at 96-97.  Notably, no action was necessary to opt into the Class Action, but if a policyholder opted out, their policy would be cancelled.  Doc. 20 at 96-97. Because Plaintiff did not respond, he was deemed to have opted into the Class Action and accepted the terms of the Rehabilitation Plan.

After the election period closed, Defendant mailed letters to each Class Action member, advising them that Defendant had assumed their policies effective December 31, 2000 and that their premiums would not be increased during the next 17 years.[1]  Doc. 20 at 3; Doc. 20 at 103-

---

[1] The letter and enclosed materials are not dated and do not contain any policyholder name or address.

2

06. In February 2001, an Oklahoma district judge signed a final judgment adjudicating both the Receivership and Class Actions. Doc. 20 at 3; Doc. 20 at 107-113.

In December 2005, Defendant sent each policyholder, including Plaintiff, a letter which included a notice that premiums were guaranteed through 2017, but could increase thereafter pursuant to the terms of the Assumption Agreement. Doc. 20 at 125-27. Defendant sent similar letters every year from 2007 through May 2013. Doc. 20 at 4; Doc. 20 at 131-69. Additionally, in May 2013, Plaintiff requested and received copies of his Policies, which included certificates of assumption stating that his benefits were as originally written except as amended by the aforementioned documents. Doc. 20 at 192-228. From October 2013 through 2016, Defendant sent correspondence to Plaintiff which again reminded him of its agreement to not raise premiums for 17 years, but advised him that an increase in cost was likely after December 31, 2017. Doc. 20 at 4; Doc. 20 at 170-90.

In May and September 2017, Defendant advised all policyholders, including Plaintiff, that premiums would increase in 2018. Doc. 20 at 4; Doc. 20 at 229-34. In April 2018, Defendant distributed the remaining funds from the Class Action to policyholders *pro rata*, including Plaintiff. The enclosed correspondence contained two checks, which were noted to be from the Class Action settlement fund, and Plaintiff cashed both checks. Doc. 20 at 4; Doc. 20 at 267-72. In July 2018, Defendant (1) advised Plaintiff that his premiums would increase in October 2018, (2) described the options that were available to him (pay the increased premiums, accept reduced death benefits, or cancel the Policies), and (3) explained in detail the Assumption Agreement process and the terms of the Rehabilitation Plan. Doc. 20 at 235-50.

### B. Procedural History

In January 2019, Plaintiff initiated this action in state court, requesting declaratory and injunctive relief to prevent Defendant from raising the premiums on his Policies.[2] Doc. 1-4 at 10-11, 13-14.  He claims that (1) he never received notice of the Assumption Agreement and did not agree to it and (2) the Rehabilitation Plan constitutes a one-sided contract of adhesion obtained by Defendant with unequal bargaining power and is unconscionable.  Doc. 1-4 at 7-8, 11.  Nevertheless, Plaintiff does acknowledge that he received notices for years stating that his premiums would likely increase in December 2017.  Doc. 1-4 at 8.  Plaintiff alleges that he learned that Defendant was going to raise the premiums on his Policies starting in June 2019 to an "exorbitant rate" that he cannot afford to pay.  Doc. 1-4 at 8-10.  Plaintiff argues that Defendant's intention to do so under the guise of the Assumption Agreement or Rehabilitation Plan is "ridiculous, deceptive and fraudulent."  Doc. 1-4 at 10.

Defendant removed the case to this Court, based on diversity jurisdiction, shortly before the scheduled hearing in state court on Plaintiff's motion for a temporary restraining order.  Doc. 1.  Plaintiff then filed the instant motion for a preliminary injunction.  Doc. 3.  Defendant opposes the relief requested, Doc. 19, and the Court convened a hearing on the matter on April 29, 2019 at which Plaintiff testified, Doc. 21.

### C. Applicable Law

The four elements a plaintiff must establish to secure a preliminary injunction are (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any

---

[2] Plaintiff initially included his insurance agent, Philip Kim, in the suit but has since dismissed the case as to him.  Doc. 8.

harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted). The plaintiff bears the burden of establishing each element. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). Indeed, the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent. *Janvey*, 647 F.3d at 591.

### D. Parties' Arguments and Analysis

Plaintiff argues that he has a substantial likelihood of success on the merits of his case because the Policies constitute one-sided contracts of adhesion, the parties had unequal bargaining power, and the Policies are unconscionable. Doc. 3 at 7. Plaintiff also testified that he did not receive contemporaneous notice of the Assumption Agreement or the Class Action. Plaintiff maintains that he faces a substantial threat of irreparable injury if an injunction is not granted because he cannot afford the increased premiums. Doc. 3 at 7. Further, if he declines to pay the increased premiums, he may lose the Policies altogether thereby forfeiting both the death benefit and the payments he has in good faith made throughout the life of the Policies. Doc. 3 at 7. Next, Plaintiff asserts that the threatened injury to him outweighs any minimal harm that would result to Defendant because Defendant can accept a reduced payment each month while this suit progresses. Doc. 3 at 7. Finally, Plaintiff submits that no public interest would be disserved if the Court granted an injunction. Doc. 3 at 7. Plaintiff requests that the Court enjoin Defendant from either taking any action in contravention of the original Policies or raising his premiums without his consent. Doc. 3 at 8.

Defendant responds that Plaintiff has failed to demonstrate a likelihood of success on the merits of his case because (1) his allegations of unconscionability are unsupported; and (2) the

uncontroverted evidence proves that Plaintiff was provided ample notice of Defendant's assumption of the Policies and of the Class Action settlement. Doc. 19 at 8. Further, Defendant contends that the Receiver negotiated the terms of the settlement and was responsible for providing notice thereof to all policyholders. Doc. 19 at 8-9. Defendant maintains that it was not involved in the notice process and did not even assume any of Mid-Continent's policies until after (1) the court-approved notice already had been provided to all policyholders, and (2) the Oklahoma state court had entered final judgment. Doc. 19 at 8-10. Defendant also asserts that no threat of irreparable injury to Plaintiff exists because his only alleged harm is monetary in nature and thus not the basis for an injunction. Doc. 19 at 10-11.

      With respect to Plaintiff's argument that he did not understand the numerous notices he received regarding the amendments to his Policies, the Court first observes that Plaintiff has been licensed as a practicing attorney in Texas since 1980. *See* https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=163005 (last visited May 16, 2019). Moreover, he testified during the hearing on this matter that he served as a municipal judge for over ten years. Viewed in the light of his extensive experience in legal matters, Plaintiff's testimony that he did not understand the numerous notices he received pertaining to the Policies borders on the frivolous.

      Moreover, even if Plaintiff did not contemporaneously receive the Assumption Agreement, notice of the Class Action, or related documents, the facts set forth above demonstrate that he was notified repeatedly over the course of more than a dozen years that Defendant had assumed the Policies as well as the options that were available to him if he did not

wish to pay the increased premiums.[3] Plaintiff nevertheless chose to maintain his Policies for many years thereafter.

Lastly, turning to Plaintiff's argument that the Policies are unconscionable contracts of adhesion as amended, insurance contracts are indeed contracts of adhesion. *Littlefield v. State Farm Fire and Cas. Co.*, 857 P.2d 65, 69 (Okla. 1993).[4] If a policy is susceptible of two constructions, the contract must be interpreted most favorably to the insured. *Id.* On the other hand, if the language of the policy is unambiguous, it must be construed in its "plain and ordinary sense." *Id.* (citation omitted). Plaintiff cites to no particular provision in any of the pertinent documents that he believes to be ambiguous. Upon careful review, the Court detects none. Accordingly, the Policies, as amended, should be enforced as written. *See also Johnson v. State Farm Mut. Auto. Ins. Co.*, 520 S.W. 92, 103 n.13 (Tex. App.—Austin, 2017) (stating that even if insurance contracts are contracts of adhesion, such contracts are not automatically unconscionable and holding that it is not *per se* unconscionable for an insurer to "reduce its risk and boost its solvency" by including a family member policy exclusion); *cf. Stumph v. Dallas Fire Ins. Co*., 34 S.W.3d 722, 731-32 (Tex. App.—Austin, 2000) (holding that evidence of a misrepresentation by an insurance agent is sufficient to support a finding of unconscionable conduct).

---

[3] As previously noted, a third-party administrator acting on the Receiver's behalf was tasked with mailing to Mid-Continent's policyholders documents advising them of the court's approval of the Assumption Agreement, Rehabilitation Plan, and Class Action. Doc. 20 at 3. It is no fault of Defendant's if Plaintiff did not receive the documentation.

[4] Although the parties do not address it, Oklahoma law appears to govern interpretation of the Policies pursuant to the terms of the parties' settlement agreement and the state court's final judgment. Doc. 20 at 91; Doc. 20 at 109. Regardless, the result would be the same under Texas law as set forth *infra*.

Because Plaintiff clearly cannot demonstrate a substantial likelihood of success on the merits of his case, it is not necessary for the Court to address the remaining three elements required to obtain a preliminary injunction.  Nevertheless, as Defendant correctly points out, Plaintiff's anticipated financial injury alone cannot constitute a basis for obtaining a preliminary injunction.  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm.") (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)).

**E. Conclusion**

For the reasons stated, Plaintiff's *Application for Preliminary Injunction*, Doc. 3, should be **DENIED**.

**SO RECOMMENDED** on May 16, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).