## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DON B. CHAE, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:19-CV-157-X-BK |
| | § | |
| AMERICAN FIDELITY ASSURANCE | § | |
| COMPANY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Referral*, Doc. 9,

Defendant's *Motion for Summary Judgment*, Doc. 29, is before the Court.  For the reasons that

follow, the motion should be **GRANTED**.

## I.   BACKGROUND[1]

This case involves a dispute between an insured and an insurance company regarding the

latter's ability to raise the insured's premium costs.  Some background is helpful for context.  In

the 1980s, Plaintiff purchased two life insurance policies ("the Policies") from Mid-Continent

Life Insurance Company of Oklahoma City ("Mid-Continent").  In 1997, Mid-Continent

experienced financial difficulties and was placed into receivership, with the Oklahoma

Commissioner of Insurance serving as Receiver (the "Receivership Action").

---

[1]This section is drawn from the Court's findings which recommended the denial of Plaintiff's
preliminary injunction motion.  *See* Doc. 24.  The associated record cites are to the appendix that
accompanied Defendant's opposition to the motion.  Doc. 20.  Defendant submitted the identical
appendix with the instant summary judgment motion together with the transcript from the
preliminary injunction hearing.  *See* Doc. 30.

During the Receivership Action, Mid-Continent policyholders filed a class action lawsuit against it (the "Class Action"). Doc. 20 at 2; Doc. 20 at 85-86. The matters were ultimately settled (collectively, the "Settlement Agreement"). Doc. 20 at 2-3. As part of the Receivership Action, Defendant agreed to assume Mid-Continent's life insurance policies and entered into an Assumption Reinsurance Agreement (the "Assumption Agreement") with the Receiver in July 2000. Doc. 20 at 2; Doc. 20 at 6-83. In September 2000, an Oklahoma district court judge approved the Receiver's Amended Rehabilitation Plan (the "Rehabilitation Plan"), which incorporated the Assumption and Settlement Agreements. Doc. 20 at 3; Doc. 20 at 109.

The Class Action was settled in November 2000 when Mid-Continent's owner agreed to pay $17.5 million into a general relief fund established for the benefit of its policyholders, which was to be administered by Defendant. Doc. 20 at 3; Doc. 20 at 84-94. Thereafter, on behalf of the Receiver, Class Action settlement administrator Rust Consulting sent Mid-Continent policyholders documentation explaining the Rehabilitation Plan and giving them until December 11, 2000 to advise whether they wanted to opt in or opt out of the Class Action settlement.[2] Doc. 20 at 3; Doc. 20 at 95-102. In relevant part, the document included Defendant's agreement to not raise policyholder premiums for a period of 17 years, but advised that premiums could be raised thereafter. Doc. 20 at 3; Doc. 20 at 96-97. Notably, no action was necessary to opt into the Class Action, but if a policyholder opted out, their policy would be cancelled. Doc. 20 at 96-97. Because Plaintiff did not respond, he was deemed to have opted into the Class Action and accepted the terms of the Rehabilitation Plan.

---

[2] The documents consisted of (1) a letter from the Receiver; (2) a 12-page Notice of Class Action, Proposed Settlement, and Fairness Hearing; (3) a three-page Amended Plan Notice to Policyholders/Introduction to the Receiver's Rehabilitation Plan; (4) a two-page Rehabilitation Opt-Out Form; (5) a Statement of Eligibility; and (6) an Election Form. Doc. 44 at 6.

After the election period closed on December 11, 2000, Defendant mailed a letter, together with a Certificate of Assumption and a Rehabilitation Endorsement, to each Class Action member, which collectively advised that Defendant had assumed their policies effective December 31, 2000 and that their premiums would not increase for the next 17 years. Doc. 20 at 3; Doc. 20 at 103-06. In February 2001, Oklahoma district court Judge Noma D. Gurich signed a final judgment adjudicating both the Receivership and Class Actions. Doc. 20 at 3; Doc. 20 at 107-113.

In December 2005, Defendant sent each policyholder, including Plaintiff, a letter which included a notice that premium rates were guaranteed through 2017, but could increase thereafter pursuant to the terms of the Assumption Agreement. Doc. 20 at 125-27. Defendant sent similar letters to each policyholder every year thereafter from 2007 through May 2013. Doc. 20 at 4; Doc. 20 at 131-69. Additionally, in May 2013, Plaintiff requested and received copies of both of his Policies, which included the Certificates of Assumption stating that his benefits were as originally written except as amended by the Rehabilitation Plan, Assumption Agreement, and Rehabilitation Endorsement which were enclosed. Doc. 20 at 191-228. From October 2013 through 2016, Defendant sent correspondence to Plaintiff which again reminded him of its agreement to not raise premiums for 17 years, and also advised him that a cost increase was likely after December 31, 2017. Doc. 20 at 4; Doc. 20 at 170-90.

In May and September 2017, Defendant advised all policyholders, including Plaintiff, that premiums would increase in 2018. Doc. 20 at 4; Doc. 20 at 229-34. In April 2018, Defendant distributed the remaining funds from the Class Action to policyholders—including Plaintiff—*pro rata*. The enclosed correspondence contained two checks, which were noted to be

from the Class Action settlement fund, and Plaintiff cashed both checks.  Doc. 20 at 4; Doc. 20 at 267-72.

In July 2018, Defendant: (1) advised Plaintiff that his Policy premiums would increase in October 2018; (2) described the options that were available to him (pay the increased Policy premiums, accept reduced death benefits, or cancel the Policies); and (3) explained in detail the Assumption Agreement process and the terms of the Rehabilitation Plan.  Doc. 20 at 235-50.

## II.    PROCEDURAL HISTORY

In January 2019, Plaintiff initiated this action in state court, requesting declaratory and immediate injunctive relief to prevent Defendant from raising the premiums on his Policies.[3] Doc. 1-4 at 10-11, 13-14.  Plaintiff claims that he never received notice of the Assumption Agreement and did not agree to it and alleges that Defendant is going to raise the premiums on his Policies to an "exorbitant rate" that he cannot afford.  Doc. 1-4 at 7-8, 10.  Plaintiff seeks a declaratory judgment that (1) the Policies are unenforceable contracts of adhesion; and (2) the portion of the Assumption Agreement allowing his premiums to increase is void.  Doc. 1-4 at 10.

Defendant removed the case to this Court, based on diversity jurisdiction, shortly before the scheduled hearing in state court on Plaintiff's motion for a temporary restraining order.  Doc. 1.  Plaintiff then filed a motion for a preliminary injunction, Doc. 3, and an evidentiary hearing was held, Doc. 21.  Plaintiff testified that he was not aware of Mid-Continent's bankruptcy, Defendant's assumption of Mid-Continent's obligations, the Class Action, or the Rehabilitation Plan until after the events underlying this action occurred.  Doc. 30 at 285-86.

---

[3] Plaintiff initially included his insurance agent, Philip Kim, in the suit but subsequently dismissed the case as to him.  Doc. 8.

4

He nevertheless acknowledged that, beginning in the early to mid-2000s, he began receiving notices from Defendant about the Rehabilitation Endorsement "almost annually," which said "[t]he current premium charged under your endorsed contract will remain in force for the period of 17 years beginning the effective date," but could increase thereafter. Doc. 30 at 296, 298-300. Plaintiff also averred that he had practiced law since 1980 and had previously been a Dallas municipal judge for 12 years. Doc. 30 at 283-84. Nevertheless, he testified that when he received the letter with the Class Action disbursement checks which explained that the checks related to those proceedings, the term "class action settlement" and the letter itself were "Greek" to him. Doc. 30 at 314-15.

Subsequently, Plaintiff's motion for a preliminary injunction was denied. Doc. 24; Doc. 31. Defendant's motion for summary judgment on Plaintiff's sole remaining claim for declaratory relief is now ripe for adjudication.

## III.    APPLICABLE LAW

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Nevertheless, a party's conclusory and self-serving statements are insufficient to defeat summary judgment. *Koerner v. CMR Const. & Roofing, LLC*, 910 F.3d 221, 227 (5th Cir. 2018) (holding that "[s]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment") (citation omitted) (alterations in original).

The Texas Declaratory Judgment Act under which Plaintiff filed suit does not apply in federal court because it is procedural rather than substantive in nature. *Camacho v. Tx. Workforce Comm'n*, 445 F.3d 407, 410 (5th Cir. 2007). In light of Defendant's removal of the action to state court, therefore, the claim will be construed as one brought under the federal Declaratory Judgment Act (the "Act"), 28 U.S.C. §§ 2201 *et seq. See Thompson v. Bank of Am., N.A.*, 13 F.Supp.3d 636, 660 (N.D. Tex. 2014). The Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

## IV.    PARTIES' ARGUMENTS AND ANALYSIS

Defendant argues that Plaintiff is not entitled to declaratory relief because the uncontroverted evidence proves that he was provided ample notice of Defendant's assumption of the Policies as well as the proposed Class Action settlement in 2000. Doc. 29 at 15. Further, Defendant contends that the Receiver negotiated the terms of the settlement and was responsible

6

for providing notice thereof to all policyholders, so it is not at fault even if Plaintiff did not receive notice. Doc. 29 at 15.

Plaintiff responds that his due process rights were violated because he was not aware of Mid-Continent's bankruptcy or the Class Action and received no notice from Defendant, the Oklahoma district court, or the Receiver. Doc. 38 at 7. Plaintiff claims that, had he received proper notice, he would have been able to choose a different option regarding his Policies, such as to terminate them or opt out of the Class Action. Doc. 38 at 7-8, 11, 18.

Plaintiff's arguments are entirely without merit. First, third-party settlement administrator Rust Consulting was tasked with mailing to Mid-Continent's policyholders the documents advising them of the Oklahoma court's approval of the Assumption Agreement, Rehabilitation Plan, and Class Action. Doc. 20 at 3. Defendant had nothing to do with the process at that point, so it is not at fault if Plaintiff did not receive the documentation—which seems doubtful in light of the evidence Defendant submitted.

Second, due process does not require that Plaintiff have personally received notice of the Class Action. True, if a forum state wishes to bind an absent class plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection, including notice and an opportunity to be heard. *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 812 (1985). But "where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,'" due process is satisfied. *Id.* Unquestionably, that occurred in this case. *See* Doc. 44 at 7-8, 11 (affidavit of Rust Consulting Executive Vice President attesting that Plaintiff was mailed notice by first class mail to 2828 Forest Lane, Ste 1100, Dallas, TX 75234, and the Class Action notice was published in the Dallas Morning News). The address to which the Class Action notice was sent is the same

address to which the Class Action disbursement checks were sent—the ones that Plaintiff admittedly cashed.

Finally, the Policies are not void as unconscionable despite Plaintiff's lamentations about how much his premium rates may increase.  Although insurance contracts are, by nature, contracts of adhesion, Oklahoma courts "have not adopted the equitable concept of unconscionability as an aid to interpret insurance contracts."[4] *Bratcher v. State Farm Fire and Cas. Co.*, 961 P.2d 828, 830-31 (Okla. 1998).  Plaintiff benefitted from the Class Action settlement for 18 years by virtue of having level premiums.  He should not be heard to complain about it now.  Thus, Defendant is entitled to summary judgment on Plaintiff's claim for declaratory relief.

## V.    CONCLUSION

For the foregoing reasons, Defendant's *Motion for Summary Judgment*, Doc. 29, should be **GRANTED**.

**SO RECOMMENDED** on February 18, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[4] Oklahoma law governs interpretation of the Policies according to the terms of the Settlement Agreement and the Oklahoma district court's final judgment.  Doc. 20 at 91; Doc. 20 at 109.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).